# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

```
LORIE ANN SMITH,                )
                                )
        Plaintiff,               )
                                )
v.                              )       Case No. CIV-15-395-JHP-KEW
                                )
NANCY A. BERRYHILL, Acting      )
Commissioner of Social          )
Security Administration,        )
                                )
        Defendant.               )
```

## REPORT AND RECOMMENDATION

Plaintiff Lorie Ann Smith (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on November 7, 1966 and was 47 years old at the time of the ALJ's decision. Claimant completed her education through the eleventh grade. Claimant has worked in the past as a housekeeper in a nursing home, interior skinner for a trailer manufacturing company, and a home health provider. Claimant alleges an inability to work beginning May 23, 2012 due to limitations resulting from left hip problems, nerve problems, nerve pain in the

3

left leg and foot, sciatic nerve pain in the left leg and foot, a shortened left leg, poor balance, severe pain and muscle spasms, and thyroid problems.

## Procedural History

On June 20, 2012, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On December 19, 2013, Administrative Law Judge Doug Gabbard, II ("ALJ") conducted a hearing by video with Claimant appearing in Ada, Oklahoma and the ALJ presiding in McAlester, Oklahoma. On April 11, 2014, the ALJ issued an unfavorable decision. On August 7, 2015, the Appeals Council denied review of the decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform light work with limitations.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) applying the

4

incorrect legal standard to evaluate the opinion of a treating physician's assistant; and (2) giving unsupported reasons for rejecting medical opinions such that the ALJ disregarded significantly probative evidence which conflicted with his RFC findings.

**Evaluating the Physician's Assistant's Opinion**

In his decision, the ALJ determined Claimant suffered from the severe impairments of chronic pain secondary to degenerative disc disease of the lumbar spine, thyroid disorder, and hip pain secondary to degenerative joint disease of the left hip. (Tr. 13). The ALJ concluded that Claimant retained the RFC to perform light work except that she was limited to only occasional climbing, balancing, stooping, kneeling, crouching, and crawling. (Tr. 15).

After consulting with a vocational expert, the ALJ concluded Claimant could not perform her past relevant work but that she could perform the representative jobs of cashier II and housekeeping cleaner, both of which the ALJ concluded existed in sufficient numbers both regionally and nationally. (Tr. 21). As a result, the ALJ found Claimant was not disabled from May 23, 2012 through the date of the decision. (Tr. 22).

Beginning in 2008, Claimant received treatment for degenerative disc disease in her lumbar spine from Dr. Richard J. Helton. (Tr.

5

251-52, 272-73). She continued to experience back pain in 2011 when she received pain medication from Dr. Helton. (Tr. 254, 256, 268, 301). He noted Claimant suffered from Legg-Perthes disease of the left hip which caused chronic pain. (Tr. 265, 299).

In May of 2012, Dr. Helton found that Claimant's Legg-Perthes disease was causing severe pain in the left leg. Claimant was also unable to bear weight with the leg and experienced decreased range of motion. (Tr. 296). X-rays of the hip revealed mild joint space narrowing and subchondral sclerosis of the femoroacetabular joint. (Tr. 301). Claimant was prescribed pain medication and was referred to a neurosurgeon. (Tr. 284).

On October 31, 2013, Dr. Helton's physician's assistant, Ruth Fereday, completed a Medication Assessment of Ability to Do Work Related Activities (Physical) form on Claimant. She opined Claimant could sit upright but not inclined for two hours in an eight hour workday; stand for two hours in an eight hour workday; and walk for one hour in an eight hour workday. She found Claimant could not work at any level in an eight hour day, even with a sit/stand option and usual breaks. Claimant could lift under 10 pounds but not repetitively. She could use both hands to grasp, push and pull, and engage in fine manipulation. She could not use her feed for pushing. Claimant needed to elevate her legs every 1-2 hours. In the narrative comments, Ms. Fereday stated that any activity during

6

the day required Claimant to take medication which affected her concentration. (Tr. 290).

The ALJ evaluated Ms. Fereday's opinion, finding hers was "not the opinion of acceptable (sic) medical sources, but rather, the opinion of "other sources" under 20 CFR 404.1513 and SSR 06-03p." He continued to set forth the standard under which he was evaluating the opinion in stating

> Information from a Physician Assistant is probative only to the extent that it aids the understanding of the impact of the claimant's impairment on her ability to work, and would be afforded the same weight as any lay individual's interpretation of medical evidence. SSR 06-3p provides that "non-medical sources" who have had contact with the individual in their professional capacity are also valuable sources of evidence for assessing a claimant's impairment severity and functioning. As PA Fereday's statements are afforded the same weight as any lay individual's interpretation of medical evidence, they have been appropriately considered.

(Tr. 19).

The ALJ then proceeded to discount Ms. Fereday's opinion in finding (1) the determination of whether a claimant is capable of employment is an issue reserved to the Commissioner; (2) the opinion is without substantial support from other evidence in the record; (3) Dr. Helton did not sign the RFC assessment form completed by Ms. Fereday; (4) and Dr. Helton's and Ms. Fereday's treatment was conservative and inconsistent with the opinion. The ALJ concluded

7

that "[a]ll in all, I find PA Fereday's account of the claimant's alleged limitations to be more an act of courtesy to a patient, rather than a genuine medical assessment of discrete functional limitations based upon clinically established pathologies." (Tr. 20). The ALJ gave Ms. Fereday's opinion "little weight." Id.

A physician's assistant is not an "acceptable medical sources," as that term is defined by the regulations. Physician's assistants fall within the category of "other sources" and are deemed to be "medical sources" who are not "acceptable medical sources." 20 C.F.R. §§ 404.1513(d)(1); 416.913(d)(1). The formulation of Soc. Sec. R. 06-3p was intended as a clarification of existing regulations. This ruling states, in pertinent part:

> [The existing] regulations provide specific criteria for evaluating medical opinions from "acceptable medical sources"; however, they do not explicitly address how to consider relevant opinions and other evidence from "other sources" listed in 20 C.F.R. 404.1513(d) and 416.913(d). With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources . . . are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

In order to effectuate this express policy, the ALJ should

discuss these "other sources" and fully explain the weight given to any such opinion. Bowman v. Astrue, 512 F.3d 1270, 1275 (10th Cir. 2008). The ALJ expressly evaluated Ms. Fereday's opinion under the "non-medical" standard of a lay individual. Although Defendant now claims that the ALJ "inaccurately" made this reference in his decision, the analysis that followed created harmless error in the stated use of the wrong legal standard. The problem with this evaluation is that the ALJ's attributing of "little weight" to the opinion is irrevocably tainted by the incorrect legal standard he cited.

Moreover, the medical treatment records from Dr. Helton and Ms. Fereday are consistent with the functional limitations found in the source statement. (Tr. 291). The ALJ ignored evidence of the effect of Claimant's impaired ability to ambulate, bear weight on his leg, and shortened leg in reaching his RFC assessment. On remand, the ALJ shall accurately apply the appropriate legal standard in evaluating Ms. Fereday's medical source statement.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social

Security Administration should be **REVERSED** and the case be **REMANDED** for further proceedings. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 14th day of February, 2017.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE